Anna Levens v. Commissioner.
Levens v. Commissioner
Docket No. 27283.
United States Tax Court
1951 Tax Ct. Memo LEXIS 45; 10 T.C.M. (CCH) 1083; T.C.M. (RIA) 51330; November 8, 1951
*45 Aaron J. Funk, Esq., 21 E. 40th St., New York, N. Y., and Harold B. White, Esq., for the petitioner. Robert Margolis, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a deficiency in income tax in the amount of $5,945.27 for the calendar year 1944 by reason of including in petitioner's gross income an item of $7,600 which was received by petitioner in 1944 as part of an award in an arbitration proceeding. [The Facts] The petitioner, an individual engaged in business at 2 West 47th Street, New York City, filed her income tax return for the year 1944 with the collector of internal revenue for the third district of New York. In 1943, petitioner had been employed for twenty-five years in a wholesale jewelry business owned by Fred Kaufman. Kaufman had been engaged in that business for fifty years and wished to retire. He told her that he wanted her to have the business and to continue it in his name. She did not have sufficient money to purchase it, but, after negotiations, entered into a partnership with Robert Staines and J. Charles Schwartz to purchase the business and to carry it on under the *46 name of Fred Kaufman Company. Staines had been a salesman for Kaufman, and Schwartz owned two retail jewelry stores in the south. A partnership agreement was executed on March 29, 1943. The partnership purchased all of Kaufman's inventory for $21,000. The agreement provided, among other things, that the term of the partnership should begin as of the date of execution of the agreement and continue for a period of two years; that the term might be renewed with the written consent of all the parties for an additional two years; that the capital of the partnership should be $21,000, each partner to contribute $7,000; that each partner should have a one-third interest in the capital of the partnership; that the profits and losses should be shared equally by the partners; that Staines and the petitioner should devote all their time and attention to the business of the partnership; that Schwartz should devote only such time and attention to the business as he in his discretion deemed necessary; and that each partner should enter or cause to be entered in the partnership books a full and accurate account of all transactions in behalf of the partnership. The partnership agreement also contained *47 the following provisions: "SIXTEENTH: In the event of a voluntary dissolution of the partnership, the net assets of the partnership are to be divided equally amongst the partners and should any of the parties hereto desire to continue the business under the firm name and style of FRED KAUFMAN COMPANY, then and in that event the other parties to this agreement agree to assign all his, her or their right, title and interest in and to the said trade name to the partner or partners remaining to do business under the said trade name, but the partner or partners desiring to retain the name and good will of the partnership must pay to each of the outgoing partners the sum of Two Thousand ($2,000.00) Dollars as a consideration therefor. * * * "SEVENTEENTH: That if any disagreement shall arise between or among the parties in respect of the partnership, or of its dissolution or in respect of any other matter, cause or thing whatsoever, and/or not herein otherwise provided for, and it be impossible to reach an agreement, the same shall be decided and determined by arbitrators. * * *" Each of the three partners contributed $7,802.61 to the capital of the partnership. Petitioner obtained *48 $5,000 of her capital contribution from Fred Kaufman in recognition of her twenty-five years' service and also the name and good will of the business, which she contributed to the partnership. Long before the end of the initial two-year period, Staines and Schwartz embarked on a course of action calculated to divert the business of the partnership to themselves and to bring about a dissolution of the partnership. Among other things, Schwartz misrepresented himself to various manufacturers as the sole owner of the business, and thereby obtained scarce merchandise which should have been sold at a profit by the partnership, but which in fact was sold at the stores owned by Schwartz. In addition, Schwartz had a hotel room in New York, where he was selling merchandise for his own account to coustomers of the partnership. And in general the activities of Schwartz and Staines resulted not only in a loss of profits to the partnership that it would otherwise have realized, but their activities brought about an impairment of the good will that attached to Fred Kaufman Company. As part of their plan, they failed to renew the lease of the office where the partnership business was conducted, *49 and after it expired in March 1944, the merchandise was put in a vault. After the partnership had operated for a year, Staines and Schwartz commenced proceedings in the Supreme Court of New York to compel petitioner to submit to arbitration on the question of whether the partnership should be dissolved. Petitioner opposed this proceeding, claiming that her partners were merely trying to force her out and that there was no reason why the partnership should be dissolved before the expiration of the two-year period specified in the partnership agreement. The New York Supreme Court held that under the partnership agreement petitioner was required to submit to arbitration. Arbitrators were selected in May 1944 and hearings were thereafter held by them during that month. At the time of the hearings, the partnership's merchandise had already been placed in the vault, and it had ceased to engage in business. At the hearings, petitioner placed before the arbitrators the various facts showing that Staines and Schwartz were carrying on a competing business for their own benefit without accounting for their profits to petitioner, and showing the impairment of the good will of the Fred Kaufman *50 Company business. The arbitrators, under date of May 31, 1944, rendered the following decision: "1. Said written partnership contract dated the 29th day of March, 1943 by and between J. Charles Schwartz, Robert Staines and Anna Levens, was broken, repudiated and breached by J. Charles Schwartz and Robert Staines, without justification and without justifiable cause. "2. We award damages to Anna Levens, to be paid by J. Charles Schwartz and Robert Staines out of their respective shares of the assets of the business, to Anna Levens, in the sum of $3,800.00 each, for the breach of said contract. "3. We find and award the distribution of the assets as follows: A) Before any distribution of the assets take place, we direct that all debts and liabilities of whatsoever nature, kind or description of the co-partnership first be paid; * * *. B) The distribution of the remaining assets shall be made in the following manner: J. Charles Schwartz is to receive $11,250.00 of the merchandise assets, and Robert Staines is to receive $11,250.00 of the merchandise assets. C) All of the other assets, after the distribution of the merchandise to J. Charles Schwartz and Robert Staines, as *51 aforesaid and after the payment of the partnership liabilities, all of the then remaining assets consisting of merchandise, cash in bank and accounts receivable be awarded to ANNA LEVENS. * * *
"4. J. Charles Schwartz and Robert Staines are barred from the use of the name of Fred Kaufman Company or successors to Fred Kaufman Company in any shape, form or manner whatsoever. "5. Anna Levens shall have the exclusive right to use the name of Fred Kaufman Company or successor to Fred Kaufman Company or any combination of said title and name, provided, however, appropriate arrangements are made with the Committee of Fred Kaufman Company for that purpose." * * * An appeal from the arbitaration award was filed in the Supreme Court of the State of New York. In the proceeding Staines opposed the confirmation of the award on the ground that the arbitrators should have limited their decision to the question of whether or not he and Schwartz had the right to dissolve the partnership, and that they were without authority to go beyond the scope of the question submitted to them and award damages to the petitioner. In an affidavit filed by the attorney for the petitioner it was urged *52 that in making an award as to the dissolution of the business it was necessary for the arbitrators to state the firm accounts, and to consider any claim that one partner had against the other partners growing out of the partnership transaction. The affidavit contained the following statement: "There were other matters brought to the attention of the arbitrators necessary for them to consider in stating the accounts. It was shown, for example, that Messrs. Schwartz and Staines during the time when the partnership business was being carried on were conducting a competing business in the partnership offices, but for their own benefit and without accounting for their profits to the third partner, Mrs. Levens. It was shown also that Mr. Schwartz had been taking partnership merchandise and paying for it arbitrary sums less than it could be sold for on the open market. The arbitrators were shown what this merchandise would have brought the firm if it had been sold in the regular course. The arbitrators should have considered all the matters in stating the final accounts on dissolution." The partnership's net worth, as of June 30, 1944, the date of dissolution, was $45,652.24. The schedule *53 of distribution, as approved by the arbitrators on June 30, 1944, was as follows: Net Worth
$45,652.24
J. C. Schwartz
$11,250.00
R. Staines
11,250.00
Anna Levens
23,152.24
$45,652.24
Pursuant to the award of the arbitrators, the petitioner received during 1944 merchandise of $7,500, cash damages of $7,600, and cash and accounts receivable of $7,900, or a total of $23,000. [1]
[Opinion] The only question here in issue is to what extent, if any, petitioner is taxable with respect to the item of $7,600 in damages received under the award. The Commissioner's principal contention is that this amount was intended to reimburse petitioner for lost profits and is therefore taxable in full as ordinary income. Petitioner, on the other hand, argues that this amount was awarded to her fo- impairment of a capital asset consisting of her partnership interest and the good will attached thereto, and that none of it is taxable. It is difficult to determine from the materials presented to us just what rights the award was *54 intended to vindicate. However, we are satisfied, after a careful examination of the entire record, that the award was intended, in part, to compensate petitioner for lost profits and in part to compensate her for impairment of the value of her interest in the Fred Kaufman Company business; and it is our best judgment that one-half of the amount in question, namely $3,800, is allocable to each portion thereof. The consequence of our finding is that $3,800 is taxable as ordinary income, [2] and that the remaining $3,800 is to be treated as a payment with respect to petitioner's capital investment in the partnership. [3] As to the latter, however, petitioner concedes that she has already recovered her cash investment in the partnership, and claims only that the award represents a payment on account of the good will which she contributed. But she has not shown any cost or other basis for the good will, and therefore it must be assumed to be zero. [4] Accordingly, although the $3,800 represents payment with respect to petitioner's capital investment, all of it must be treated as being in excess of basis and taxable as capital gain. *55 Decision will be entered under Rule 50. Footnotes
1. The discrepancy between this amount of $23,000 and the amount of $23,152.24 on the schedule of distribution has not been explained.↩
2. Cf. (C.A. 6).↩
3. Cf. (C.A. 1), certiorari denied, . ↩
4. Petitioner suggests that the good will had substantial value at the time that she contributed it to the partnership. But such value was not her basis. She paid nothing for the good will; and there is no showing that it had any basis other than cost, namely, zero.↩